UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:08-cr-00274-ESH |
| KEVIN A. RING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT KEVIN RING'S
MOTION TO UNSEAL, FOR A NON-CASE-RELATED PURPOSE, DISCOVERY
PRODUCED PURSUANT TO A PROTECTIVE ORDER**

More than three years ago, Defendant Kevin Ring was convicted of conspiracy, honest

services fraud, and providing illegal gratuities to a federal public official.  Thereafter, this Court

sentenced Ring to serve 20 months in prison, the D.C. Circuit affirmed his convictions, and the

Supreme Court denied his petition for a writ of certiorari.  *See United States v. Ring*, Crim. No.

08-274, 2011 WL 7790743 (D.D.C. Oct. 27, 2011), *aff'd*, 706 F.3d 460 (D.C. Cir. 2013), *cert.

denied*, 134 S. Ct. 175 (Oct. 7, 2013).  Ring's offenses stemmed from a five-year conspiracy with

Jack Abramoff and others.  In total, 20 corrupt public officials and lobbyists were convicted as a

result of the government's investigation.

During the course of discovery, the government produced to Ring a PowerPoint

presentation.  The document was produced under the restrictions of protective orders issued by

the Court.  *See* Dkt. Nos. 19, 40, and 51.  The first of those protective orders provides as follows:

"Ring shall use discovery materials and their contents solely for the preparation, trial, and direct

appeal of this matter *and for no other purpose whatsoever*."  Dkt. No. 19 at 1 (emphasis added).

Ring has now filed a motion to remove the restrictions of the protective orders with

respect to selected pages of the PowerPoint presentation so that they "can be provided to public

interest groups, legal academics, and others in order to educate the public about how pleas and

charging decisions can work and how prosecutors' actions can affect the criminal justice process." Dkt. No. 314 at 1.  Ring does not contest that his requested relief would contravene the terms of the protective orders.  *See* Dkt. No. 413 at 1-3.

Ring's motion should be denied.  First, the document at issue was never filed with the Court, and there is neither a First Amendment nor common law right to access the government's criminal discovery.  The document, which is not reflected in the docket in this matter, is not part of the judicial record, undermining Ring's purported justification for unsealing in order to provide greater "public access to judicial proceedings." Dkt. No. 314 at 1.  Second, even assuming a public right of access to the material at issue here, Ring lacks standing to assert that right on behalf of others.  Ring is seeking relief from the protective orders governing discovery so that he can share restricted documents with third parties for the purpose of advancing a non-litigating agenda.  That is precisely the kind of non-litigating purpose that protective orders are designed to preclude, and that purpose does not wane over time.  Indeed, there is no expiration date on the protective orders.  Finally, release of the material would undermine the purpose of protective orders, and the selected pages Ring seeks to disclose offer only a partial snapshot of a much larger presentation and an even longer plea negotiation and therefore provide an incomplete and unbalanced view of the issue on which he hopes to "educate the public."

**I.      There is No Right to Access the Selected Pages Ring Seeks to Disclose.**

Ring asserts, generally, that the public has a right to access the  government's criminal discovery, Dkt. No. 314 at 1-3, but he does not specifically identify the source of the right he is asserting.  The Supreme Court has recognized both a First Amendment and a common law right to access.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 598, 608-10 (1978).  Neither of these rights applies here.

"The First Amendment guarantees the press and the public access to aspects of court proceedings, including documents, 'if such access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct.'"  *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997) (quoting *Washington Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991)).  The Supreme Court has recognized, however, that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).  Expanding on this, the D.C. Circuit in *El-Sayegh* concluded that there is no historical right to access a withdrawn plea agreement that had been "submitted only as an exhibit to [a] motion to seal," which was "never ruled on . . . because the plea agreement itself collapsed."  *Id.*; *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 934 (D.C. Cir. 2003) (holding that the First Amendment right of access "does not extend to non-judicial documents that are not part of a criminal trial, such as the investigatory documents at issue here," which included arrest records and "information about where and when each individual was arrested, held, and released"); *id.* ("We will not convert the First Amendment right of access to criminal judicial proceedings into a requirement that the government disclose information compiled during the exercise of a quintessential executive power.").  The government is not aware of – and Ring has not cited – any case holding that the type of document at issue here has historically been made available.

The second source of a right of access is "the broader, but weaker, common law right to judicial records . . . ."  *El-Sayegh*, 131 F.3d at 160.  In *El-Sayegh*, the D.C. Circuit reversed the district court's decision denying a defendant's motion to remove from the district court's docket his withdrawn plea agreement, holding that "what makes a document a judicial record and

subjects it to the common law right of access is the role it plays in the adjudicatory process." *Id.* at 163 (holding that the "appropriate device" for obtaining non-adjudicatory documents, such as withdrawn plea agreements, from the executive is through a Freedom of Information Act request). The D.C. Circuit recently reaffirmed this rule in *S.E.C. v. American International Group.*, 712 F.3d 1, 3 (D.C. Cir. 2013), a case in which a third party asserted both a common law and First Amendment right to access reports ("IC reports") prepared pursuant to a consent decree, which were subject to a confidentiality agreement. The court concluded that it was unnecessary to answer the question whether the "government's interest in secrecy outweigh[ed] the public's interest in disclosure," holding instead "that the IC reports [were] neither judicial records nor public records." *Id.* As it explained, "if a document was never part of [the underlying record], it cannot have played any role in the adjudicatory process: though filing a document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite." *Id.* at 4; *see also id.* at 4 n.1 ("The district court issued an order protecting the reports' confidentiality and ruled below that [petitioner] has a right of access to them, but neither decision is relevant to our analysis."); *id.* at 5 ("Unfortunately for [petitioner], the value of the reports for proper oversight of the Executive does not itself justify disclosure under the judicial records doctrine.").

The cases Ring cites—*E.E.O.C. v. National Children's Center*, 98 F.3d 1406 (D.C. Cir. 1996), and *Martin Marietta Corp. v. Dalton*, 974 F. Supp. 37 (D.D.C. 1997)—do not support a finding that the document at issue is a judicial document subject to a First Amendment or common law right of access. In *National Children's Center*, the D.C. Circuit held that the relevant factors favored public access to the parties' consent decree. 98 F.3d at 1409-10. This holding is inapposite, however, because, although the case pre-dated *El-Sayegh*, the consent

decree at issue there, which ultimately settled the underlying action, undoubtedly falls within the category of documents that *El-Sayegh* describes as adjudicatory.  Ring's assertions that "[t]here exists in this Circuit a 'strong presumption in favor of public access to judicial proceedings,'" *see* Dkt. No. 314 at 1 (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409), and that "[t]his Circuit has stated that '[t]he courts are public institutions that best serve the public when they do their business openly and in full view,'" *see* Dkt. No. 314 at 1 (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1408), are misplaced because the document at issue in this case is not a part of the judicial proceedings.  Ring's argument proves too much, as it would effectively eliminate the availability of protective orders in discovery.

Ring's second case, *Dalton*, a self-described "reverse FOIA case," is also inapposite. 974 F. Supp. 37 (internal quotation marks omitted).  In *Dalton*, a government contractor sought to enjoin another government contractor from complying with a FOIA request, and the district court concluded that the underlying policy behind FOIA and the importance of government contracting outweighed the contractor's interest in keeping the documents secret.  *Id.* at 40-41. *Dalton* has no relevance outside of the FOIA context.

## II.      Ring Lacks Standing to Assert a Third Party's Right to Access.

Even assuming that a First Amendment or common law right to access criminal discovery exists, Ring lacks standing to assert this right on behalf of third parties.  Ring makes clear in his motion that he does not seek to unseal the selected pages of the PowerPoint presentation to advance any interest as a criminal defendant; rather, he readily concedes that he seeks relief so that he can share sealed documents with outside parties for the purpose of advancing a non-litigating agenda.  Ring's failure to plead or demonstrate actual, individualized injury deprives him of standing.  *See Sibley v. Obama*, 866 F. Supp. 2d 17, 22 (D.D.C. 2012) ("Standing to support a claimed violation of an individual's right to access court requires

demonstration of 'actual injury.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996)); *cf.*

*Lewis*, 518 U.S. at 349 n.1 (standing "is jurisdictional and not subject to waiver").  The Supreme

Court has consistently and unambiguously held that "the 'injury in fact' test requires more than

an injury to a cognizable interest.  It requires that the party seeking review be himself among the

injured."  *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *accord Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 563 (1992).  Defendant Ring has access to the document at issue and has

made no showing of *personal* prejudice or injury based on the *public's* lack of access.

III.    **Ring's Motion Threatens the Purpose of the Protective Orders.**

A protective order is designed to promote open and broad discovery, and the risk of

subsequent disclosure, particularly for a non-case-related purpose, undermines that objective.

The criminal discovery process was not designed to permit defendants to make post-conviction

use of protected documents for non-case-related purposes.

That is particularly true here, where the document at issue was part of a more

comprehensive and complete negotiation regarding a potential plea agreement.  To reveal only

six pages of the document, which was part of a lengthy and complex conversation, as

representative of "the daily workings of the criminal charging, plea, and sentencing processes,"

Dkt. No. 314 at 3, would work an unfairness on the government.  Ring's request also risks

chilling candor in future plea negotiations, a risk addressed in other contexts by Federal Rule of

Evidence 410, which significantly restricts the admission of statements made during plea

discussions.  *See* Fed. R. Evid. 410(a)(4).  Indeed, this Circuit has emphasized the importance of

protecting plea negotiation documents from public disclosure:

> The idea's [of giving public access to a withdrawn plea agreement]
> logical incoherence is, of course, reflected in its practical effects—to
> thwart the use of documents that parties would not submit at all
> without assurances of confidentiality.  We can readily imagine, for
> example, cases where the unsealing of a plea agreement would be a

deal-breaker.  If moving to file the plea agreement under seal resulted
in disclosure of the agreement when the motion was not granted, even
if the plea was then not offered at all, defendants in such cases would
be unlikely to run the risk of trying.  This chilling of plea negotiations
is precisely the evil sought to be avoided by Federal Rule of Criminal
Procedure 11(e)(6) . . . .

*El-Sayegh*, 131 F.3d at 162.

## IV.    Conclusion

For the foregoing reasons, this Court should deny defendant Ring's motion.

Respectfully submitted,

JACK SMITH
Chief
Public Integrity Section

Dated: January 6, 2013            By:      /s/ Peter Koski_____
PETER KOSKI
Deputy Chief
Public Integrity Section
U.S. Department of Justice
1400 New York Ave, NW
Washington, D.C. 20005
Ph: 202-307-3589
Peter.Koski@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

    /s/ Peter Koski
PETER KOSKI
Deputy Chief
Criminal Division, Public Integrity Section
United States Department of Justice

Dated: January 6, 2013